United States District Court
Middle District of Florida
Jacksonville Division

**DONALD EDWARDS,**

    *Plaintiff,*

v.                                                           NO. 3:18-CV-1388-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Donald Edwards brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Under review is a decision by the Administrative Law Judge ("ALJ") dated December 20, 2017. Tr. 37–50. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 37–51, and the parties' briefs, Docs. 23, 24, and are not fully repeated here.

Edwards alleged disability beginning on May 23, 2012, including from Crohn's disease. Tr. 364, 371. To understand limitations Edwards may have from Crohn's disease, the ALJ conducted a supplemental hearing, at which Ashok Jilhewar, M.D., a doctor board-certified in internal medicine and gastroenterology, testified. Tr. 59–74. He expressed concern that Edwards's treating gastroenterologist had not documented the correlation between Edwards's reports of frequent bowel movements and Edwards's use of excessive alcohol. Tr. 62. Dr. Jilhewar explained,

> Alcohol damages or destroys the lining of the small bowel. The consumption of alcohol at the level documented in the medical record,

> about a 12-pack of beer a day to 30 beers or can[s] a day, can cause diarrhea, and quite severe. And what I do not have in the medical record is the number of bowel movements with the complete total abstinence from alcohol.

Tr. 62.

The ALJ found Edwards has severe impairments of irritable bowel syndrome; Crohn's disease (small bowel); and disorders of the left shoulder, left knee, and spine; and several non-severe impairments, including a history of substance-abuse disorder (alcohol).[1] Tr. 39–40.

The ALJ found Edwards has no impairment or combination of impairments that meets or equals any listing, including for inflammatory bowel disease (Listing 5.06). Tr. 42.

The ALJ found Edwards has the residual functional capacity ("RFC") to perform sedentary work with additional limitations.[2] Tr. 42. The ALJ included no limitation for bathroom breaks.

Edwards testified he has at least six bowel movements daily, he urinates three to four times daily, his ability to work is limited by an excessive need for bathroom breaks (including problems with urgency for bowel movements and urination), drinking alcohol has no effect on the number of bowel movements he has and, if anything, drinking alcohol decreases the number of times he uses the bathroom. Tr. 49; *see also* Tr. 64–65, 87 (Edwards's testimony). Upon hearing Edwards's testimony,

---

[1]Besides a history of substance-abuse disorder, the ALJ found Edwards has non-severe impairments of hypertension, chronic anemia, a history of right carpal tunnel syndrome, a history of sleep deprivation, and a history of post-traumatic-stress disorder. Tr. 40.

[2]For the RFC, the ALJ found Edwards can do no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and reaching with the left upper extremity; can never climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to vibration and hazards. Tr. 42.

Dr. Jilhewar observed, "In the opinion of the treating gastroenterologist as recently as 2017, [the Crohn's disease] was so-called mild, but claimant continued to have four to five bowel movements by self-report, usually after eating, whereas the testimony is different than what the gastroenterologist wrote in [the] 2017 office visit." Tr. 66. Asked to opine about Edwards's work-related limitations, Dr. Jilhewar testified:

> About the bowel movement, it is difficult to state whether it's the alcohol intake or not because there is the entry from the application perspective. … [on December 13, 2015, there are remarks of] the treating provider for … substance abuse treatment unit at a V.A. hospital, and it says alcohol five days on, five days off. When on, at least 12-packs of beer a day for 10 years. Ten years includes [INAUDIBLE] 2005. And therefore I am not considering the bowel movement frequency in my assessment because alcohol, definitely 12 cans of beer a day, causes bowel movements up to eight a day. At the same time, the recovery period can be one week, and that is my problem in assessing the bowel movements.

Tr. 69–70.

The ALJ found Edwards's medically determinable impairments could reasonably be expected to cause his alleged symptoms but his statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." Tr. 43.

The ALJ reviewed the medical evidence. Tr. 43–49. The ALJ observed records from the Veteran's Administration ("VA") show Edwards was followed for Crohn's disease, vitamin D deficiency, iron deficiency due to chronic blood loss, and hypertension; his treatment for Crohn's disease included azathioprine and prednisone; he had indicated overall improvement with prednisone; he had a problem with ethanol abuse; and he was advised about the effects of binge drinking on his liver functioning. Tr. 43 (citing Exhibits 1F and 2F). The ALJ described follow-up visits, including: in March 2013, Edwards reported having about five loose bowel movements daily and one nocturnal bowel movement but no gastrointestinal bleeding; in January 2014, Edwards reported having five bowel movements daily and

3

alcohol cessation improved his bowel movements; in November 2016, Edwards reported having diarrhea four times daily after eating but stated he was uninterested in treatment with Humira; in December 2016, Edwards presented to an emergency room with complaints of abdominal pain, vomiting, and diarrhea for two days and reported inconsistent use of azathioprine, recurrent occasional flare-ups, and "self-medicating" with beer; and in January 2017, Edwards primarily complained about weight loss and again declined Humira. Tr. 44–46.

In discussing Edwards's Crohn's disease, the ALJ stated:

> [Edwards]'s symptoms have been mild and he has been maintained on medication. He reported multiple bowel movements daily preventing work activity (hearing testimony). However, records do not indicate that he is as limited as alleged and he had better management of symptoms with compliance with treatment. During a gastroenterology, 6-month follow-up in May 2017, the claimant noted bowel movements were regular, but variable. The clinical assessment was clinically stable Crohn's and he was continued on his current regimen. Despite his complaints, he has not had a significant weight loss and has been advised to lose weight. In addition, [Edwards] has repeatedly declined Humira. In addition, he continued with ETOH [ethanol] abuse despite being advised regarding the effects on his condition. Medical expert, Dr. Jilhewar, indicated that [Edwards's] ETOH abuse contributed to increased bowel movements (hearing testimony).

Tr. 48 (internal citations omitted).

The ALJ continued:

> I further note that [Edwards] has not required extended inpatient hospitalization for a physical problem. There is no indication that [Edwards] has any medication side effects that would affect his ability to work. The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Edwards] testified that he started attending school last year. He spends time studying for classes. … [Edwards's] ability to engage in a full range of daily activities, including taking college courses, performing household chores and helping with care of his mother indicates he is not as limited as alleged. In addition, none of

4

[his] treating physicians enumerated any physical work-related limitations.

Tr. 48.

The ALJ discussed Dr. Jilhewar's testimony: "[Dr. Jilhewar] noted the claimant refused Humira because he did not want to take it due to side effects. … He noted that at the time of [a March 2014] motor vehicle accident, the claimant's blood alcohol level was 368. … He indicated that the claimant's bowel disorder was impacted by his alcohol use as alcohol causes bowel movements." Tr. 49.

The ALJ added:

> Upon questioning by [Edwards's] attorney, Dr. Jilhewar acknowledged that [Edwards's] Crohn's disease could cause urgency, especially with continued use of alcohol. Although [Edwards] alleged this as a factor interfering with his ability to work along with excessive need for bathroom breaks, I did not include any urgency/bathroom break limitations in the [RFC] **as the claimant's allegations are not corroborated by ongoing reports to treating sources, as discussed above**.

Tr. 49 (emphasis added). The ALJ gave Dr. Jilhewar's opinion great weight. Tr. 49.

The ALJ discussed and gave significant weight to a March 2015 consultative examination by Robert Martin, M.D., in which Dr. Martin reported Edwards was on regular medications for control of his Crohn's disease, Tr. 48, 1260, and some weight to a July 2015 opinion of state-agency consultant Edward Molis, M.D., who opined Edwards can perform a reduced range of light work, Tr. 48, 146–50.

Based on the RFC and other factors, the ALJ found Edwards could perform his past relevant work as an insurance office manager. Tr. 49. She therefore found no disability. Tr. 50.

Edwards challenges the ALJ's statement emphasized above. Doc. 23 at 6, 8. He argues the ALJ did not "fully and fairly" evaluate the medical evidence because that

5

evidence includes many references to frequent bowel movements.[3] Doc. 23 at 7 (citing Tr. 539, 861 [in August 2012, Edwards reported he had up to eight bowel movements daily]; Tr. 857 [in September 2012, Edwards reported four loose bowel movements daily on a good day and eight on a bad day]; Tr. 571, 808–09 [in March 2013, Edwards reported he had about five loose bowel movements daily]; Tr. 574, 812 [in June 2013, Edwards reported he had increased diarrhea]; Tr. 764 [in January 2014, Edwards reported five loose bowel movements daily]; Tr. 1787–88, 1794 [in December 2016, Edwards reported abdominal pain and diarrhea and doctor opined Edwards needed to be treated for acute Crohn's disease flare]). The evidence does not indicate whether Edwards was reporting bowel movements for a 24-hour period or for the daytime period, referencing only "per day."

In essence, Edwards argues substantial evidence does not support the ALJ's statement or the failure to include in the RFC a limitation concerning bathroom breaks. *See* Doc. 23 at 5–6.

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "Substantial evidence … is more than a mere scintilla. …

---

[3]Edwards also cites treatment notes from before the alleged May 23, 2012, onset date. Doc. 23 at 7 (citing Tr. 499 [in January 2011, Edwards reported he had eight bowel movements daily]; Tr. 471 [in March 2011, colonoscopy showed diagnosis of chronic ileitis with active cryptitis, and Edwards reported he had four bowel movements daily, a slight improvement after beginning new medication]; Tr. 730 [in May 2011, Edwards reported up to eight loose bowel movements daily]; Tr. 556 [in December 2011, Edwards reported he had more than six bowel movements daily]).

6

It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoted authority and alterations omitted).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). An error is harmless if it did not affect the ALJ's ultimate determination. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

An ALJ must consider all relevant record evidence. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks omitted). An ALJ's determinations may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983).

In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence the condition is so severe that it can be reasonably

7

expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, an ALJ must consider all evidence, including objective medical evidence and statements from the claimant and others. *Id*. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3). An ALJ also must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Id*. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ must articulate her reasoning.[4] *Holt*, 921 F.2d at 1223.

Here, the ALJ applied the correct standards and found while Edwards's impairments could reasonably be expected to cause his alleged symptoms, his subjective allegations were inconsistent with medical opinions, his medical record showing mild Crohn's disease and effective control with treatment, Dr. Martin's consultative examination, Edwards's daily activities, and that no treating physician had placed any restriction on his functioning. *See* Tr. 48–49.

Edwards shows no harmful error. The ALJ correctly observed Edwards did not consistently report problems with urgency or frequency of urination to his treating sources. The ALJ cited only one record in which Edwards reported an issue with urination, *see* Tr. 47 ("[I]n April 2017, the claimant complained of urgency and

---

[4]Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id*. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character" and provided a two-step evaluation process. *Id*. Because the ALJ issued her decision on December 20, 2017, Tr. 50, the new SSR applies here. *See Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply when the ALJ issued his decision before the SSR effective date).

frequency of urination." (citing Tr. 1827)), and Edwards does not point to any other such records or argue that the ALJ erred in her assessment of his claims regarding urinary urgency or frequency. *See, e.g.*, Doc. 23 at 7 (highlighting evidence of reports of frequent bowel movements).

Regarding urgency or frequency of bowel movements, the ALJ summarized the medical evidence, including records documenting Edwards's reports of bowel movements to his treating sources. *See, e.g.*, Tr. 44 ("During a VA follow-up appointment in March 2013, the claimant stated he had about five loose bowel movements a day and one nocturnal bowel movement. … [In January 2014, he] described having five bowel movements a day."); Tr. 46 ("[In November 2016,] he reported diarrhea four times a day after eating."). She did not have to specifically refer to every piece of evidence, *see Dyer*, 395 F.3d at 1211, and she did not—as Edwards implies—completely ignore medical records showing he complained to treating sources about frequent bowel movements.

Even if the ALJ erred in describing how consistently Edwards reported frequent bowel movements to his treating sources, Edwards shows no harm. The ALJ found his statements about the intensity, persistence and limiting effects of his symptoms—including his reports of frequent bowel movements—were not entirely consistent with the record evidence, Tr. 47, and gave reasons supporting that finding, Tr. 48–49. She declined to include a bathroom-break limitation in the RFC based on her overall assessment of Edwards's claimed symptoms—not only because she thought the medical records reflected inconsistent reporting of a need for frequent bathroom breaks.

Moreover, the vocational expert testified Edwards could still perform his past relevant work as a manager even if he had to take four unscheduled bathroom breaks in addition to customary breaks (two 15-minute breaks and a 30-minute lunch break). Tr. 49, 101–02. Because Edwards's past relevant work is skilled, the vocational expert testified he would have more flexibility to take unscheduled breaks. Tr. 102. Even

9

considering Edwards's testimony that he requires multiple unscheduled bathroom breaks, the vocational expert's testimony supports the ALJ's finding that Edwards could perform his past relevant work without a bathroom-break limitation in the RFC. Tr. 49.

Edwards challenges only the "no ongoing reports to treating sources" reason and does not argue that substantial evidence does not support the other reasons the ALJ gave for discounting his claimed symptoms.

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Donald Edwards and close the file.

**Ordered** in Jacksonville, Florida, on March 23, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record